# EXHIBIT A

Andrew Parker Felix (SBN 276002)
MORGAN & MORGAN, P.A.
633 West Fifth Street, Suite 2200
Los Angeles, CA 90071
Telephone: (407) 244-3209
Facsimile: (407) 245-3334
andrew@forthepeople.com

R. Allen Smith, Jr. (*pro hac vice forthcoming*)
THE SMITH LAW FIRM, PLLC
300 Concourse Blvd., Suite 104
Ridgeland, MS 39157
Telephone: (601) 952-1422
Facsimile: (601) 952-1426
Email: asmith@smith-law.org
*Attorneys for Plaintiff*

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/28/2025 7:45 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Cordon, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| SHARON MIRTAHERI, an individual,<br><br>     Plaintiff,<br><br>vs.<br><br>L'ORÉAL USA, INC., a Delaware Corporation doing business in California,<br><br>L'ORÉAL USA PRODUCTS, INC., a Delaware Corporation doing business in California,<br><br>JOHN PAUL MITCHELL SYSTEMS, a California Corporation doing business in California,<br><br>GOLDWELL NEW YORK, a foreign company doing business in California,<br><br>HENKEL, a German Corporation doing Business in California, | Case No.: 25STCV12312<br><br>Department: _____<br><br>Judge: _____<br><br>**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL:**<br><br>1. **Strict Liability – Failure to Warn**<br>2. **Strict Liability – Design Defect – Risk-Utility Test**<br>3. **Strict Liability – Design Defect – Consumer Expectations Test**<br>4. **Negligent Failure to Warn**<br>5. **Deceit by Concealment**<br>6. **Violations of California Unfair Competition Law (UCL)** |

SCHWARZKOPF, a German Corporation
doing business in California,

FRAMESI SpA, an Italian Corporation doing
business in California,

FRAMKAT L.P. d/b/a Framesi North
America, a Pennsylvania Corporation doing
business in California,

FT PITT FRAMESI, LTD., a Pennsylvania
Corporation doing business in California, and

JOHN DOE CORPORATIONS 1-100,
inclusive,

     Defendants.

Plaintiff SHARON MIRTAHERI herein (referred to as "Plaintiff"), by and through counsel, for her causes of action against the Defendants, files the herein Complaint and alleges as follows:

## I.     PARTIES

1.     Plaintiff SHARON MIRTAHERI is a competent individual, over the age of 18, a Citizen of the United States, and a resident of Roanoke County in the state of Virginia.  Plaintiff is a licensed cosmetologist and has been since 1975.

2.     All claims in this action are a direct and proximate result of the negligent, willful, and wrongful acts and/or omissions of Defendants and/or their corporate predecessors in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the products by L'ORÉAL USA, INC.; L'ORÉAL USA PRODUCTS, INC.; MATRIX PROFESSIONAL HAIR; REDKEN; JOHN PAUL MITCHELL SYSTEMS;  GOLDWELL NEW YORK; HENKEL; SCHWARZKOPF; FRAMESI SpA; FRAMKAT L.P.;  FT PITT FRAMESI, LTD. and JOHN DOE CORPORATIONS 1-100; known as Framcolor, Color Gel, So Color, Igora, Top Chic, and L'Oreal Professional (hereinafter "the PRODUCTS").  Plaintiff in this action seeks recovery for damages as a result of developing bladder cancer, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of hair dyes, and the attendant effects of developing bladder cancer.  All of the claims in this action involve common legal, common factual, and common medical issues.

3.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant Defendant L'ORÉAL USA, INC., is a corporation doing business in and authorized to do business in the state of California and was incorporated in Delaware.  L'ORÉAL USA, INC., is a subsidiary of the French cosmetics giant L'Oréal S.A., the world's largest cosmetic company.

4.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant L'ORÉAL USA, INC., maintains an office and principal place of business and headquarters located at 10 Hudson Yards, New York, New York 10001, and process may be served upon its registered agent, Corporation Service Company which does business in California

as CSC- Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150, Sacramento, California 95833.

5.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant L'ORÉAL USA, INC., is engaged in the manufacturing, packaging, advertising, and distributing of many consumer products, including the Cosmetic Products at issue here, throughout the United States.  In addition to manufacturing and distributing products using the "L'Oréal" brand, L'Oréal also manufactures and distributes products using the "Redken" and "Matrix" brand, including Cosmetic Products at issue here, throughout the United States.

6.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant Defendant L'ORÉAL USA PRODUCTS, INC., is a corporation doing business in and authorized to do business in the state of California, with its principal place of business and headquarters at 10 Hudson Yards, New York, New York 10001, and process may be served upon its registered agent, Corporation Service Company, 80 State Street, Albany, New York 12207.

7.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant L'ORÉAL USA PRODUCTS, INC., is engaged in the manufacturing, packaging, advertising, and distributing of many consumer products, including the Cosmetic Products at issue here, throughout the United States.  In addition to manufacturing and distributing products using the "L'Oréal" brand, L'Oréal also manufactures and distributes products using the "Redken" and "Matrix" brand, including Cosmetic Products at issue here, throughout the United States.

8.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant MATRIX PROFESSIONAL HAIR is part of L'ORÉAL USA, INC.'s Professional Products Division.  MATRIX was founded in 1980 and acquired by L'ORÉAL USA, INC. in 2000.

9.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant REDKEN is part of L'ORÉAL USA, INC.'s Professional Products Division.  REDKEN was founded in 1960 and acquired by L'ORÉAL USA, INC. in 1993.

10.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant Defendant JOHN PAUL MITCHELL SYSTEMS (hereinafter referred to as "JPMS"), is

a corporation doing business in and authorized to do business in the state of California, and was incorporated in California.  JPMS, was founded in 1980 and is a manufacturer of hair care producing and styling tools through several brands, including Paul Mitchell.

11.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant JPMS, maintains an office and principal place of business and headquarters located at 20705 Centre Pointe Parkway, Santa Clarita, California 91350, and process may be served upon its registered agent, CT Corporation System, 330 North Brand Boulevard, Suite 700, Glendale, California 91203.

12.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant JPMS, is engaged in the manufacturing, packaging, advertising, and distributing of many consumer products, including the Cosmetic Products at issue here, throughout the United States.  In addition, JPMS manufactures and distributes products using the "Paul Mitchell" brand, including Cosmetic Products at issue here, throughout the United States.

13.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant HENKEL a/k/a HENKEL AG & Co. KGaA (hereinafter referred to as "HENKEL") maintains an office and principal place of business and headquarters located at One Henkel Way, Rocky Hill, Connecticut 06067, and process may be served upon its registered agent, Corporation Service Company which does business in California as CSC- Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150, Sacramento, California 95833.

14.    Plaintiff is informed and believes, and based thereon alleges, that at all times relevant Defendant SCHWARZKOPF, INC. (hereinafter referred to as "SCHWARZKOPF"), was founded by Hans Schwarzkopf in 1898 and in 2015 was acquired by HENKEL.

15.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant SCHWARZKOPF maintains an office and principal place of business and headquarters located at 5800 Bristol Parkway, Culver City, California 90230. SCHWARZKOPF, as a division of HENKEL, may be served through its parent company, HENKEL, upon its registered agent, Corporation Service Company which does business in California as CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150, Sacramento, California

95833.

16.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendants SCHWARZKOPF and HENKEL are engaged in the manufacturing, packaging, advertising, and distributing of many consumer products, including the Cosmetic Products at issue here, throughout the United States.

17.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times GOLDWELL NEW YORK was founded by Hans and Steven Neumaier in 1976 and was acquired by COSMOPROF SERVICES USA, LLC (hereinafter referred to as "COSMOPROF") in 2005. On September 1, 2023, COSMOPROF was acquired by parent company SALLY BEAUTY HOLDINGS, INC (hereinafter referred to as "SALLY BEAUTY"). SALLY BEAUTY maintains an office and a principal place of business at its headquarters located at 3001 Colorado Boulevard, Denton, Texas 76210.

18.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant Defendant GOLDWELL NEW YORK maintains an office and principal place of business and headquarters located at 2117 Brighton Henrietta Town Line Road, Rochester, New York 14623. GOLDWELL NEW YORK, as a division of COSMOPROF, may be served through Denise Paulonis, Chief Executive Officer, of its parent company, SALLY BEAUTY, at its headquarters located at 3001 Colorado Boulevard, Denton, Texas 76210.

19.     FRAMESI SpA, is an Italian multinational beauty company founded in 1945 by Roberto Franchina with its principal place of business in Italy. FRAMESI SpA may be served with process through the Hague Convention at FRAMESI SpA, Strada Statale Dei Giovi 135 Paderno Dugnano, 20037 Italy.

20.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant Defendant FRAMKAT L.P. d/b/a Framesi North America, is a corporation doing business in and authorized to do business in the state of California and was incorporated in Pennsylvania.  FRAMKAT L.P., is a subsidiary of the Italian professional hair products giant FRAMESI SpA.

21.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant

---

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL                    PAGE 6 OF 35

times Defendant FRAMKAT L.P., maintains an office and principal place of business and headquarters located at 507 Avenue A, Leetsdale, Pennsylvania 15056, and process may be served upon its registered office at 400 Chess Street, Coraopolis, Pennsylvania 15108.

22.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant Defendant FT PITT FRAMESI, LTD. d/b/a Framesi North America, is a corporation doing business in and authorized to do business in the state of California and was incorporated in Pennsylvania.  FT PITT FRAMESI, LTD., is a subsidiary of the Italian professional hair products giant FRAMESI SpA.

23.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant FT PITT FRAMESI, LTD., maintains an office and principal place of business and headquarters located at 507 Avenue A, Leetsdale, Pennsylvania 15056, and process may be served upon its registered office at 400 Chess Street, Coraopolis, Pennsylvania 15108.

24.     FRAMESI SpA, FRAMKAT L.P. and FT PITT FRAMESI, LTD. are collectively referred to as "FRAMESI".

25.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendants FRAMESI, are engaged in the manufacturing, packaging, advertising, and distributing of many consumer products, including the Cosmetic Products at issue here, throughout the United States.

26.     Plaintiff is informed and believes, and based thereon alleges that, at all relevant times, the true names or capacities, whether individual, corporate, or otherwise, of JOHN DOE CORPORATIONS 1-100, inclusive, are unknown to the Plaintiff at the time of original filing of the underlying complaint in this action and, therefore, sues said Defendants by such fictitious names.  Plaintiff prays leave to amend this Complaint to show their true names and capacities and/or bases for liability when the same have been finally determined.

27.     Plaintiff is informed and believes, and based thereon alleges that, at all relevant times, the true names or capacities, whether individual, corporate, or otherwise, of JOHN DOE CORPORATIONS 1-100, inclusive, remain unknown to Plaintiff and, therefore Plaintiff sues said Defendants by such fictitious names.  Plaintiff is informed and believes and based thereon

alleges that each of the Defendants designated herein by fictitious names is some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff as alleged herein.

28.     Plaintiff is informed and believes, and based thereon alleges that, at all relevant times, the true names or capacities, whether individual, corporate, or otherwise, of JOHN DOE CORPORATIONS 1-100, inclusive, and Other Defendants named by Plaintiff are collectively referred to herein as "Defendants" and all acts and omissions of Defendants as alleged herein were undertaken by each of the Defendants or said Defendants' agents, servants, employees, and/or owners, acting in the course and scope of its respective agencies, services, employments and/or ownerships.

29.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant to this action, all Defendants were engaged in the research, development, manufacture, design, testing, sale, and marketing of the PRODUCTS, and introduced such products into interstate commerce with knowledge and intent that such products be sold in the State of California.

30.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times material hereto, Defendants developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, and/or sold the defective products, including but not limited to the following:

   a.     Paul Mitchell

   b.     Goldwell

   c.     Schwarzkopf

   d.     L'Oreal

   e.     Framesi

   f.     Redkin

   g.     Matrix

31.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times material hereto, Defendants marketed these products to the general public and sold both to

1    retail outlets and distributors throughout the world.

2         32.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant

3    times material hereto, Defendants have engaged in substantial, continuous economic activity in

4    California, including marketing, distribution, and sale of billions of dollars in products to the

5    public in California, including but not limited to the aforementioned products, that said activity

6    by Defendants is substantially connected to the Plaintiff's claims as alleged herein.

7         33.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant

8    times material hereto, Defendants' defective hair products were placed into the stream of

9    interstate commerce and which Plaintiff was exposed from approximately 1975 through the

10   current date.

11        34.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant

12   times material hereto, Plaintiff worked in a salon as a professional hair dresser/cosmetologist for

13   over 40 years thus exposing Plaintiff to said PRODUCTS from approximately 1975 through the

14   current date.

15        35.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant

16   times material hereto, Plaintiff worked in a salon as a professional hair dresser/cosmetologist

17   working with and/or around said PRODUCTS through her normal day to day duties as a

18   professional hair dresser/cosmetologist. In her capacity as a professional hair

19   dresser/cosmetologist, Plaintiff worked coloring hair at least two to three times a day for five days

20   a week that exposed her to said PRODUCTS on a daily basis from approximately 1975 through

21   the current date.

22        36.    Upon information and belief, beginning in approximately 1975, Plaintiff, while a

23   citizen in the state of Maryland, was exposed to PRODUCTS purchased by or through the salons

24   where she was employed, Peter of London.  Plaintiff was further exposed by mixing, applying,

25   cleaning, inhaling, and removing hair color PRODUCTS and any residue from bowls, brushes,

26   towels, sinks, and tabletops, on a daily basis throughout her time spent in hair salons and while

27   employed in hair salons from approximately 1975 through the current date in the state of

28   Maryland.

---

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL       PAGE 9 OF 35

37.    Plaintiff is informed and believes, and based thereon alleges, that in February of 2025 Plaintiff was diagnosed with bladder cancer, and suffered effects and sequelae therefrom, caused by her regular and prolonged use and exposure to chemicals in the PRODUCTS, which was a direct and proximate result of the unreasonably dangerous and defective nature of the Defendants' hair color PRODUCTS and the chemicals contained therein, and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, formulation, processing, packaging, promotion, distribution, marketing and sale of the PRODUCTS.

38.    Upon information and belief, as a direct and proximate result of the injuries alleged herein, Plaintiff has incurred and will in the future incur medical expenses and other special damages, Plaintiff has endured and will endure pain and suffering and loss of enjoyment of life, Plaintiff has suffered and will continue to suffer other general damages, and Plaintiff has otherwise been damaged in a personal and pecuniary nature.

39.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times, all allegations concerning Defendants includes Defendants' parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, organizational units of any kind, predecessors, successors and assigns, and their officers, directors, employees, agents, representatives, and any and all other persons acting on behalf of Defendants.

40.    Plaintiff is informed and believes, and based thereon alleges that, all claims in this action are a direct and proximate result of Defendants' and/or their corporate predecessors negligent, willful, and wrongful conduct by Defendants' design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and/or sale of the PRODUCTS.

## JURISDICTION AND VENUE

41.    This Court has subject matter jurisdiction over this action pursuant to Article 6, Section 10 of the Constitution of the State of California.

42.    This Court has personal jurisdiction over Defendants because they are authorized to do business and they do conduct business in California, have specifically marketed, advertised, and made substantial sales in California, and have sufficient minimum contacts with this state

and/or sufficiently avails themselves of the markets of this state through their promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

43.    Jurisdiction and venue are proper in the Superior Court of California for Los Angeles County because, at all times relevant hereto, Defendant JOHN PAUL MITCHELL SYSTEMS maintained a principal place of business and was engaged in the manufacturing, packaging, advertising, and distributing of many consumer products, including the Cosmetic Products at issue here, in the State of California and County of Los Angeles.

44.    Defendants' PRODUCTS were all sold either directly or indirectly, to members of the general public within the state of California.

45.    At all relevant times, Defendants expected or should have expected that their acts and omissions would have consequences within the United States and the state of California.

## II.    FACTUAL ALLEGATIONS

### A.    Products at Issue

46.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

47.    There are at least six products at issue in this case manufactured and marketed by Defendants during this time period.

48.    Upon information and belief, at all relevant times alleged herein, Defendants advertised and marketed the PRODUCTS as safe for use.

49.    Plaintiff herein was exposed to the PRODUCTS while spending time in a salon and while working in a salon.  This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

### B.    FDA Regulation of Cosmetics

50.    Cosmetics marketed in the United States must comply with the Federal Food, Drug, and Cosmetic Act (FD&C Act), and Fair Packaging and Labeling Act (FP&L Act).  The FD&C Act defines cosmetics as articles intended to be applied to the human body for cleansing, beautifying, promoting attractiveness, or altering appearance without affecting the body's structure or functions.  Hair Dyes are included in this definition.

---

51.     The label statements required under the authority of the FD&C Act must appear on the inside as well as the outside container or wrapper. The labeling requirements are codified at 21 CFR 701 and 740.  Cosmetics not labeled in accordance with the requirements may be considered misbranded and may be subject to regulatory action.

52.     Cosmetics must bear warning labels prescribed by (21 CFR 740).  The warning label on a cosmetic must be appropriate and contain adequate directions for safe use.  The warning label on a cosmetic must be prominent and conspicuous.   Specifically, 21 CFR §740.1(a) establishes warning statements for cosmetics such as hair dye.  The Code states "The label of a cosmetic product **shall** bear a warning statement whenever necessary or appropriate to prevent a health hazard that **may be** associated with the product."

53.     The cosmetic industry is self-regulated by manufacturers of cosmetic products. The FD&C Act does not require cosmetics, including hair dyes, to be approved by the FDA before they go on the market.  The FD&C Act does not require specific tests to ensure the safety of cosmetic ingredients or final products.  Also, the FD&C Act does not require cosmetic companies to share their safety information with the FDA.  Therefore, the manufacturers of cosmetics are solely and legally responsible for ensuring the safety of their products to the public and making sure they are properly labeled.

**C.    Hair Dyes**

54.     Hair dye usage is very common in the United States with 75% of women and 38% of men regularly coloring their hair every 6-8 weeks.  US hair dye sales total $2 billion dollars per year with world-wide sales of $12 billion dollars per year.   64% of people colored their hair black, 16% brown, and 20% preferred another color.  33% of people in the US preferred to have their hair colored in a salon.

55.     Hair dyes use chemicals to change hair color.  The three main types of hair dye are: permanent, semi-permanent, and temporary.  Permanent hair dyes cause lasting chemical changes in the hair shaft, and last until the hair is replaced by new growth. Permanent hair dyes make up about 80% of the market and use colorless dye intermediates and dye couplers.  When mixed with hydrogen peroxide the intermediates and couplers react with each other to form

pigment molecules. Darker colors are formed by using higher concentrations of intermediates. Semi-permanent hair dyes do not penetrate into the hair shaft, and typically last for about 10 washings. Temporary hair dyes cover the surface of the hair and do not penetrate into the hair shaft. They generally last for 1 to 2 washings.

56.     Hundreds of chemicals are used to make hair dyes, many are carcinogenic.

57.     People that are exposed to hair dyes frequently as part of their occupation such as hairdressers, cosmetologists, hair colorists, barbers, and salon workers have higher lifetime exposures to these carcinogenic chemicals than people who have their hair dyed in a salon or who dye it at home.

58.     In 2010, the International Agency for Research on Cancer (IARC) completed its comprehensive review and found that based on excessive risk of bladder cancer from occupational exposure to hair dyes the hairdressing occupation was listed as a Group 2A "probably carcinogenic to humans".

**D.    Studies on Bladder Cancer/Occupational Exposure**

59.     In the United States there are approximately 83,000 bladder cancer diagnoses per year, and approximately 16,000 deaths. Bladder cancer is the ninth most common cancer in the United States.

60.     Most bladder cancer tumors form after an individual is exposed to carcinogens that enter the body through inhalation, dermal contact, or ingestion. The two most frequent routes of exposure are through cigarette smoke and occupation. It is estimated that 5 percent of all bladder cancer diagnoses result from occupational exposure.

61.     In 1975, a peer-reviewed study published by Bruce Ames found that nearly 90% of commercially available hair dyes were mutagenic indicating a potential to cause DNA damage which could lead to cancer development. Safety concerns were raised in this study due to the presence of mutagenic hair dye intermediates called aromatic amines. In response to the Ames study, manufacturers supposedly changed the components in permanent hair dye products in an effort to eliminate carcinogenic chemicals. Manufacturers represented to the FDA and the public

that now hair dyes were safe for use. Carcinogenic aromatic amines supposedly removed by manufacturers at this time were 4-aminobiphenyl, o-toluidine, benzidine, and 2-naphthylamine, among many others. However, studies conducted since the 1970s conclusively prove that manufactures failed to remove carcinogenic aromatic amines from its hair dye products.

62.     In 1994, a meta-analysis was conducted entitled *Epidemiological Evidence on Hair Dyes and the Risk of Cancer in Humans.* This meta-analysis consisted of 7 cohort studies and 11 case control studies which included data on occupational exposure to hair dyes by hairdressers, barbers, and beauticians and their subsequent bladder cancer risk. The study found that **"The association between past occupational exposure to hair colourants and bladder cancer risk is reasonably consistent on epidemiological data and plausible on biological grounds…the general evidence from case control studies is in agreement with that from cohort investigations, and is compatible with a moderately increased bladder cancer risk among hairdressers and barbers."**

63.     In 2001, a study entitled *Use of Permanent Hair Dyes and Bladder-Cancer Risk* Case Control Study was published by Gago-Dominguez among others. The study found that individuals that used hair dye once per month more than doubled their risk for bladder cancer, and among those that used hair dyes for once a month for 15 or more years tripled their risk. **The study further found that occupational exposures of hairdressers and barbers that were likely exposed to hair dyes for 10 or more years increased their risk of bladder cancer fivefold.** The study concluded that long-term use of permanent hair dyes is a risk factor for bladder cancer and estimated 19% of bladder cancer diagnoses in women in Los Angeles County could be attributed to permanent hair dye usage.

64.     In 2003, the FDA published a peer-reviewed study entitled, *Identification of Aminobiphenyl Derivatives in Commercial Hair Dyes.* **This study found up to 12.8 ppb of 4-Aminobiphyenyl (4-ABP), a known bladder carcinogen, in 8 out of 11 tested commercial hair dyes.**

65.     In 2008, a study entitled *A Meta-Analysis on the Association Between Bladder Cancer and Occupation,* was published. The study found that hairdressers had a statistically

significant 23% increased risk of bladder cancer, *(1.23 RR, 95%, CI 1.11-1.37)*.  The scientists stated ***"Although the relative risk of bladder cancer associated with these occupations is small, the public health impact may be significant, considering the substantial number of people who were and are employed in these occupations."***

66.    In 2008, a study was published entitled *Elevated Bladder Cancer Risk Due to Colorants-A Statewide Case-Control Study in North Rhine-Westphalia, Germany*.  The study's questionnaire asked about occupation for more than 6 months and for exposures to several occupational and nonoccupational bladder carcinogens, and was limited to diagnoses of bladder cancer after 1988.  The study concluded that individuals exposed to hair colorants showed a nearly fivefold elevated bladder cancer risk (OR 4.9% for hairdressers).  The scientists stated, **"The results of this epidemiological study confirm the hypothesis that individuals exposed to colorants show an elevated bladder cancer risk."**

67.    In 2008, **a second study was published that found 4-ABP, and known bladder carcinogen, in hair dyes.  The study found 4-ABP in 28 of 54 commercial hair dyes.  In addition, this study found the presence of a second known bladder carcinogen, Ortho-Toluidine in 34 of 54 commercial hair dyes tested.**  *Determination of aromatic amines in hair dye and henna samples by ion-pair extraction and gas chromatography-mass spectrometry,* Akyuz (2008).

68.    In 2009, Harling and others published *Bladder Cancer Among Hairdressers: A Meta-Analysis.*  42 studies were included and this meta-analysis and statistically significant increased risks for bladder cancer were found for all but one analysis. The risk increased with duration of employment from 1.30 (95% CI 1.15 to 1.48) for 'ever registered as hairdressers' to 1.70 (95% CI 1.01 to 2.88) for 'job held greater than or equal to 10 years'.  The study concluded by stating **"The results of the present meta-analysis on 42 studies suggest that there is robust evidence for an increased risk of bladder cancer among hairdressers, in particular for hairdressers in a job held greater than or equal to 10 years . . . This corroborates the interpretation that there is a causal association between bladder cancer and job held as a hairdresser."**

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL          PAGE 15 OF 35

69.     In 2014**, a third study was published that found known bladder carcinogens present in hair dyes.**  The study entitled *Exposure of Hairdressers to ortho-toluidine (known bladder carcinogen) and meta-toluidine in hair dyes*, included a questionnaire that asked if the subjects were currently employed as a hairdresser in last 4 months, other jobs/hobbies, lifestyle, treatments per week of permanent/semi hair dye, type of gloves used, frequency of glove use (90%), and frequency they changed gloves.  Other occupational exposures were ruled out by asking about other jobs held within the past 6 months that would expose hairdressers to dyes. Blood samples were taken, and hemoglobin (Hb) adducts were analyzed for the presence of ortho-toluidine.  **The study found that hairdressers using permanent hair dyes and waving products were exposed to ortho-toluidine and the amount of ortho- toluidine in blood increased with increasing number of weekly hair dye treatments**.  The study also stated that the analyses of Hb adducts in exposed hairdressers is the best method for monitoring long-term exposure to aromatic amines because of the lifetime of Hb is about 4 months, and because of the close relationship with DNA adducts.

70.     The most recent global meta-analysis, published in 2015 in JAMA Oncology, looked at all types of occupations and risk for bladder cancer, and reported on those occupation classes that were associated with increased bladder cancer risk. (Cumberbatch et al. 2015)  The authors conducted a systematic review search for studies through May 2014. Eligible studies focused primarily on bladder cancer and provided confidence intervals (or data for calculating them). There were 217 reports available and eligible for meta-analyses; of these, 42 (of 61) occupational classes showed elevated relative risks for bladder cancer incidence and 16 (of 40) occupational classes showed increased bladder cancer mortality risk. Reduced risk of bladder cancer incidence and mortality were reported for only 6 and 2 occupational classes, respectively. The number of studies that reported on hairdressing occupation was not given, but the data tables indicated that 47 "comparisons" were used in determining relative risk for bladder cancer with hairdressing occupation. The authors summarized data over the studies as Standard Incidence Ratios (SIR) or Standard Mortality Ratios (SMR). Overall, the risk for bladder cancer among hairdressers was increased by 32% (SIR 1.32, 95% CI 1.24-1.4). The risk for bladder cancer

mortality increased by 16% (SIR 1.16, 95% CI 1.01-1.34). **The study also found that the risk of bladder cancer was highest in occupations in which workers were exposed to aromatic amines (rubber, plastic, and dye workers, hairdressers, and painters).** The scientists listed the aromatic amines of 4-ABP and Ortho-Toluidine as "definitive bladder carcinogens", that the main carcinogen for hairdressers is 4-amino-biphenyl (4-ABP), and that historical reports showed that **16%-19% of workers exposed to 4-ABP contract bladder cancer**.

**E.    4-Aminobiphenyl and Ortho-Toluidine are Human Carcinogens**

71.    Chemical agents are classified according to their surety of cancer risk.  There are two institutions that identify, evaluate, and classify human carcinogens.   The first is the International Agency for the Research of Cancer (IARC).  The second is the National Toxicology Program (NTP).

72.    IARC is part of the World Health Organization (WHO) that conducts and coordinates research into causes of cancer.  It also collects and publishes surveillance data regarding the occurrence of cancer worldwide.  Its published "Monographs" identify carcinogenic hazards and evaluate environmental causes of cancer in humans.

73.    The National Toxicology Program (NTP) is program within the Department of Health and Human Services (DHHS) headquartered at the National Institute of Environmental Health Sciences (NIEHS) of the National Institutes of Health (NIH). NTP evaluates chemicals of concern for their potential to cause cancer in humans. As part of their cancer evaluation work, NTP publishes their Report on Carcinogens (RoC).  RoC is a document that identifies chemicals that may pose a carcinogenicity hazard to human health. The NTP RoC classifies chemicals as either "known to be a human carcinogen" or "reasonably anticipated to be a human carcinogen."

74.    IARC classified 4-Aminobiphenyl and Ortho-Toluidine as carcinogenic to humans (Group 1). IARC stated that both 4-ABP and O-T have been found in hair dyes.

75.    The NTP (RoC) classified 4-Aminobiphenyl and Ortho-Toluidine as "known to be a human carcinogen".   The NTP also stated that 4-ABP and O-T have been found in hair dyes.

**F.    Biological Mechanism of Action by 4-Aminobiphenyl and Ortho-Toluidine**

76.    4-ABP and o-toluidine have been found in DNA adducts of the bladder and

mammary glands in exposed humans which are biological markers that allow for identification of agents responsible for initiation of carcinogenic processes also reflecting exposure, biological effective dose, and local metabolic processes involved in formation of reactive species capable of binding to DNA and other macromolecules.  Gorlewska-Roberts (2002), *Carcinogen-DNA Adducts in Human Breast Epithelial Cells*.

77.    According to IARC and the NTP, 4-ABP causes cancer through a mechanism involving metabolic activation in the liver, where it is converted into a reactive N-hydroxy derivative which then forms DNA adducts, primarily by generating a highly reactive aryl nitrenium ion, ultimately leading to DNA damage and contributing to the development of bladder cancer, particularly in humans; this process is considered the primary mechanism of action for 4-ABP.  While the metabolism occurs primarily in the liver, the reactive metabolites are transported to the bladder, where they can readily bind to DNA due to the acidic urine environment, leading to bladder cancer development.

78.    According to IARC and NTP, ortho-toluidine's primary mechanism of action is through its metabolic activation to a highly reactive electrophilic metabolite, N-hydroxy-ortho-toluidine, which can directly bind to DNA, causing DNA adducts and ultimately leading to mutations that can contribute to bladder cancer development, particularly with prolonged exposure; this is considered the primary route of carcinogenicity associated with ortho-toluidine. The bladder is considered the primary target tissue for ortho-toluidine-induced cancer due to its high levels of metabolic enzymes and the ability of the urinary tract to concentrate the metabolite.

### III.    CLAIMS FOR RELIEF

### COUNT 1.  STRICT LIABILITY – FAILURE TO WARN

79.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

80.    On information and belief, Defendants manufactured, distributed, and sold the hair dye PRODUCTS that Plaintiff used and/or was exposed to at an early age.

81.    On information and belief, the PRODUCTS had potential risk and side effects that were known or knowable in light of the scientific and medical knowledge that was generally

accepted in the scientific community at the time of their manufacture, distribution and sale.

82.    On information and belief, the potential risks and side effects presented a substantial danger when the PRODUCTS were used or misused in an intended or reasonably foreseeable way.

83.    On information and belief, ordinary consumers would not have recognized the potential risks and side effects described herein.

84.    On information and belief, Defendants failed to adequately warn or instruct of the potential risks and side effects as evidenced through the following conduct:

    a.    Omitting warnings on product labels or from other marketing materials the warning that use of and/or exposure to the PRODUCTS could lead to an increased risk of bladder cancer.

    b.    Representing on the labeling and in their marketing materials that Defendants PRODUCT is safe for use as directed.

    c.    Failing to inform its customers and end users of the PRODUCTS, including Plaintiff, of a known catastrophic health hazard associated with their use.

    d.    Procuring and disseminating false, misleading, and biased information regarding the safety of its PRODUCTS to the public and using influence over governmental and regulatory bodies regarding their PRODUCTS.

85.    As a result of Defendants' failure to warn, Plaintiff was exposed to and used the PRODUCTS and was harmed by her exposure and use of said PRODUCTS as described herein.

86.    On information and belief, as a proximate result of the conduct, acts, and omissions alleged herein, Plaintiff has incurred medical expenses, Plaintiff will in the future incur medical expenses, Plaintiff has suffered and will suffer other special damages, Plaintiff has suffered and will suffer conscious pain and suffering and other general damages.

**COUNT 2.  STRICT LIABILITY – DESIGN DEFECT – RISK-UTILITY TEST**

87.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

88.    On information and belief, at all relevant times alleged herein, the PRODUCTS

were designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to be tested, inspected or failed to be inspected, labeled, advertised, promoted, marketed, supplied, distributed, licensed, wholesaled, and sold by Defendants in the regular course of business.

89.     On information and belief, at all relevant times alleged herein, the PRODUCTS manufactured, supplied, licensed and/or placed into the stream of commerce by Defendants herein were defective and unreasonably dangerous in that:

    a.   the utility of the PRODUCTS does not outweigh the danger of developing bladder cancer when the PRODUCTS are used as intended;

    b.   the PRODUCTS are not reasonably fit, suitable or safe for their intended purpose and the foreseeable risks far exceeded the benefits associated with the design or formulation;

    c.   the PRODUCTS contained inadequate warnings or instructions; and,

    d.   the PRODUCTS contained dangerous ingredients while feasible safer alternative designs and ingredients were available.

90.     Plaintiff is informed and believes that, at all relevant times alleged herein, Defendants knew that the PRODUCTS were to be purchased and used without inspection for defects.

91.     Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, the PRODUCTS were and are unsafe for their intended use by reason of defects in the design so that they would not safely serve their purpose, but would instead expose the users of said PRODUCTS to serious injuries.

92.     Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, there were practical and feasible alternative designs and formulations that would have prevented and/or significantly reduced the risk of Plaintiff's injuries, without impairing the reasonable anticipated or intended function of the PRODUCTS.  These safer alternative designs and/or formulations were economically and technologically feasible, and would have prevented and/or significantly reduced the risk of Plaintiff's injuries without

substantially impairing utility.

93.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, the PRODUCTS were substantially in the same condition as when they left the possession of Defendants.

94.    At all pertinent times, Plaintiff was exposed to and/or used the PRODUCTS in the manner that was intended which were a reasonably foreseeable and normally intended uses by Defendants, as said Defendants gave no warnings in opposition, but rather, promoted the use of the PRODUCTS.

95.    At all relevant times alleged herein, the design and/or formulation of the PRODUCTS was a substantial factor in causing harm to Plaintiff.

96.    As a legal and proximate result of the aforementioned defects in the design and/or formulation of the PRODUCTS, Plaintiff sustained the injuries and damages as alleged herein.

97.    On information and belief, as a proximate result of the conduct, acts, and omissions alleged herein, Plaintiff has incurred medical expenses, Plaintiff will in the future incur medical expenses, Plaintiff has suffered and will suffer other special damages, Plaintiff has suffered and will suffer conscious pain and suffering and other general damages.

## COUNT 3.  STRICT LIABILITY – DESIGN DEFECT – CONSUMER EXPECTATIONS TEST

98.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

99.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants are the manufacturers, distributors, and suppliers of the PRODUCTS, which are within the ordinary experience and understanding of a consumer.  A consumer may reasonably believe that said PRODUCTS are designed to be and may be applied to the body without causing significant harm.

100.    California law allows a design defect claim to be proved either consumer expectations test or the risk utility test.  As stated by the California Supreme Court:  "Notably, the Third Restatement rejects the consumer expectations test for proving design defect liability.

---

(See Rest.3d Torts, Products Liability, §2, com. g, pp. 27-28.)  This position is contrary to California law, which allows a design defect to be shown by either the consumer expectations or the risk utility test.  (See ante, 202 Cal.Rptr3fd at p. 469, 370 P.3d at p. 1033; *Barker, supra,* 20 Cal.3d at p. 432, 143 Cal.Rptr. 225, 573 P.2d 443.)  The present case concerns only failure to warn, and we express no view on design defect liability."  *Webb v. Special Elec. Co., Inc.* (2016) 63 Cal.4th 167, 184 fn 8.

101.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, the PRODUCTS were defective in design or formulation in that, they did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way, and they were unreasonably dangerous, and more dangerous than an ordinary consumer would expect.

102.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, said PRODUCTS were inherently dangerous and harmful for their intended use, contrary to ordinary consumer expectations.

103.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, as a result of the defective condition of the PRODUCTS, Plaintiff suffered injuries and damages as herein alleged, and the failure of the PRODUCTS to perform safely was a substantial factor in causing Plaintiff's harm.

104.    On information and belief, as a proximate result of the conduct, acts, and omissions alleged herein, Plaintiff has incurred medical expenses, Plaintiff will in the future incur medical expenses, Plaintiff has suffered and will suffer other special damages, Plaintiff has suffered and will suffer conscious pain and suffering and other general damages.

105.    On information and belief, at all relevant times alleged herein, Plaintiff's injuries occurred while the PRODUCTS were being used in an intended and reasonably foreseeable manner, and Defendants were aware of and intended that the PRODUCTS would be used in the manner in which the materials were actually used.

## COUNT 4.  NEGLIGENT FAILURE TO WARN

106.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth

1    herein.

2        107.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant

3    times alleged herein, Defendants were negligent in marketing, designing, manufacturing,

4    producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or

5    more of the following respects:

6        a.    failing to warn Plaintiff of the hazards associated with the use of the PRODUCTS;

7        b.    failing to properly test their PRODUCTS to determine adequacy and effectiveness

8              or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

9        c.    failing to properly test their PRODUCTS to determine the increased risk of bladder

10             cancer during the normal and/or intended use of the PRODUCTS;

11       d.    failing to inform ultimate users, such as Plaintiff, as to the safe and proper methods

12             of handling and using the PRODUCTS;

13       e.    failing to remove the PRODUCTS from the market when the Defendants knew or

14             should have known the PRODUCTS were defective;

15       f.    failing to instruct the ultimate users, such Plaintiff, as to the methods for reducing

16             the type of exposure to the PRODUCTS which caused increased risk of bladder

17             cancer;

18       g.    failing to inform the public in general and the Plaintiff in particular of the known

19             dangers using the PRODUCTS;

20       h.    failing to advise users how to prevent or reduce exposure that caused increased

21             risk of bladder cancer;

22       i.    marketing and labeling the PRODUCTS as safe for all uses despite knowledge to

23             the contrary; and,

24       j.    failing to act as a reasonably prudent company under similar circumstances.

25       108.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant

26    times alleged herein, Defendants knew, or reasonably should have known, that users, including

27    Plaintiff, would not realize the dangers of using the PRODUCTS, and a reasonable manufacturer,

28    distributor and/or seller under the same or similar circumstances would have warned of the

---

dangers or instructed on the safe use of the PRODUCTS.

109.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

110.    On information and belief, at all relevant times alleged herein, Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when used or misused in a reasonably foreseeable manner.

111.    On information and belief, as a direct and proximate result of the Defendants' negligence in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately or were a substantial factor in causing Plaintiff to develop bladder cancer.

112.    On information and belief, as a proximate result of the conduct, acts, and omissions alleged herein, Plaintiff has incurred medical expenses, Plaintiff will in the future incur medical expenses, Plaintiff has suffered and will suffer other special damages, Plaintiff has suffered and will suffer conscious pain and suffering and other general damages.

## COUNT 5.  DECEIT BY CONCEALMENT

113.     Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

114.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants from the time that the PRODUCTS were first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived the Plaintiff and the public in general, by concealing from the, the true facts concerning the PRODUCTS, which the said Defendants had a duty to disclose.

115.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants conducted a sales and marketing campaign to promote the sale of the PRODUCTS and willfully deceived the Plaintiffs, and the public in general as to the health risks and consequences of the use of the PRODUCTS, which included but not limited to, the following false, deceptive, misleading, and untruthful advertisements, public statements,

marketing campaigns, and promotions:

    a.   failing to disclose or warn Plaintiff of the hazards associated with the use of the PRODUCTS;

    b.   failing to properly test their PRODUCTS to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

    c.   failing to properly test their PRODUCTS to determine the increased risk of bladder cancer during the normal and/or intended use of the PRODUCTS;

    d.   failing to inform ultimate users, such as Plaintiffs, as to the safe and proper methods of handling and using the PRODUCTS;

    e.   failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

    f.   failing to instruct the ultimate users, such as Plaintiff, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of bladder cancer;

    g.   failing to disclose to the public in general and the Plaintiff in particular the known dangers of using the PRODUCTS;

    h.   failing to advise users how to prevent or reduce exposure that caused increased risk for bladder cancer;

    i.   marketing and labelling the PRODUCTS as safe for all uses despite knowledge to the contrary; and,

    j.   failing to act like a reasonably prudent company under similar circumstances.

116.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants were aware of the foregoing, and that the PRODUCTS were not safe, fit, and effective for use as intended.  Furthermore, said Defendants were aware that the use of the PRODUCTS was hazardous to health, and that the PRODUCTS carry a significant propensity to cause serious injuries to users including, but not limited to, the injuries suffered by Plaintiff as alleged herein.

117.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant

times alleged herein, that Defendants intentionally concealed and suppressed the true facts concerning the PRODUCTS with the intent to defraud the Plaintiff, other consumers, and the public in general, in that said Defendants knew that Plaintiff would not have used the PRODUCTS if he had known the true facts concerning the risks and dangers of the PRODUCTS.

118.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, that as a result of the foregoing fraudulent and deceitful conduct by Defendants, Plaintiff suffered injuries and damages as alleged herein.

119.    On information and belief, as a proximate result of the conduct, acts, and omissions alleged herein, Plaintiff has incurred medical expenses, Plaintiff will in the future incur medical expenses, Plaintiff has suffered and will suffer other special damages, Plaintiff has suffered and will suffer conscious pain and suffering and other general damages.

## COUNT 6.  VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW

120.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

121.    This Count 6 is a cause of action for the violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

122.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants from the time that the PRODUCTS were first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived the Plaintiff and the public in general, by concealing from the, the true facts concerning the PRODUCTS, which the said Defendants had a duty to disclose.

123.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants conducted a sales and marketing campaign to promote the sale of the PRODUCTS and willfully deceived the Plaintiffs, and the public in general as to the health risks and consequences of the use of the PRODUCTS, which included but not limited to, the following false, deceptive, misleading, and untruthful advertisements, public statements, marketing campaigns, and promotions:

a.    failing to disclose or warn Plaintiff of the hazards associated with the use of the

PRODUCTS;

b.   failing to properly test their PRODUCTS to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

c.   failing to properly test their PRODUCTS to determine the increased risk of bladder cancer during the normal and/or intended use of the PRODUCTS;

d.   failing to inform ultimate users, such as Plaintiffs, as to the safe and proper methods of handling and using the PRODUCTS;

e.   failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

f.   failing to instruct the ultimate users, such as Plaintiff, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of bladder cancer;

g.   failing to disclose to the public in general and the Plaintiff in particular the known dangers of using the PRODUCTS;

h.   failing to advise users how to prevent or reduce exposure that caused increased risk for bladder cancer;

i.   marketing and labelling the PRODUCTS as safe for all uses despite knowledge to the contrary; and,

j.   failing to act like a reasonably prudent company under similar circumstances.

124.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants were aware of the foregoing, and that the PRODUCTS were not safe, fit, and effective for use as intended.  Furthermore, said Defendants were aware that the use of the PRODUCTS was hazardous to health, and that the PRODUCTS carry a significant propensity to cause serious injuries to users including, but not limited to, the injuries suffered by Plaintiff as alleged herein.

125.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, that Defendants intentionally concealed and suppressed the true facts concerning the PRODUCTS with the intent to defraud the Plaintiff, other consumers, and the

public in general, in that said Defendants knew that Plaintiff would not have used the PRODUCTS if he had known the true facts concerning the risks and dangers of the PRODUCTS.

126.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, that as a result of the foregoing fraudulent and deceitful conduct by Defendants, Plaintiff suffered injuries and damages as alleged herein

127.    The foregoing fraudulent and deceitful conduct by Defendants amounts to unlawful, unfair, and fraudulent practices in violation of the UCL.

128.    Defendants' acts, omissions, and practices described above constitute "unfair" practices because they are contrary to California's legislatively declared policy condemning deceptive advertising and marketing of goods and services. Defendants falsely represented the nature, quality, condition, ingredients, health hazards, and dangers posed by the PRODUCTS.

129.    Defendants' conduct constitutes unfair methods of competition and business practices.

130.    Defendant's acts, omissions, and practices described above are contrary to California public policy and constitute immoral, unethical, and unscrupulous practices that caused substantial injury to Plaintiff.

131.    All of Defendants' unlawful and unfair conduct, failures to disclose, and fraudulent practices and misrepresentations alleged herein occurred in the course of Defendants' respective businesses and were part of a generalized course of conduct.

132.    Defendants' unlawful, unfair, and fraudulent conduct alleged herein was designed to and did induce Plaintiff to purchase the PRODUCTS.

133.    Plaintiff would not have purchased the PRODUCTS but for Defendants' unlawful, unfair, and fraudulent business conduct.

134.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business conduct, Plaintiff has suffered concrete and particularized injuries, including monetary loss in the form of paying for the PRODUCTS.

135.    Plaintiff is entitled to appropriate relief, including restitution, declaratory relief, and a permanent injunction prohibiting Defendants from engaging in the aforementioned

practices that violate the UCL. Plaintiff further seeks reasonable attorneys' fees and costs under applicable law including California Code of Civil Procedure 1021.5.

## TOLLING STATUTES OF LIMITATIONS AND PUNITIVE DAMAGES

136.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully set forth herein.

137.    Plaintiff suffered illnesses that have latency periods and do not arise until many years after exposure.  Plaintiff's illnesses did not distinctly manifest as having been caused by the PRODUCTS until Plaintiff was made aware that the bladder cancer could be caused by use of and exposure to the PRODUCTS.  Consequently, the discovery rule applies to this case and the statute of limitations has been tolled until the day that Plaintiff knew or had reason to know that bladder cancer was linked to the use of and exposure to the PRODUCTS.

138.    Furthermore, the running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent concealment and conduct.  Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the true risks associated with the chemicals contained within the PRODUCTS.

139.    As a result of Defendants' actions, Plaintiff was unaware, and could not reasonably know, or could not have reasonably learned through reasonable diligence, that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

140.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of the PRODUCTS.  Defendants were under a duty to disclose the true character, quality and nature of PRODUCTS because this was non-public information which the Defendants had and continue to have in their exclusive control, and because the Defendants knew that this information was not available to Plaintiff.

141.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting profitable PRODUCTS, notwithstanding the known or reasonably known risks.  Plaintiff and medical professionals could not have afforded

and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on Defendants' representations.

142.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, in representations to the Plaintiff and the public in general, Defendants also fraudulently concealed and intentionally omitted the following material information:

a.    that the PRODUCTS were not as safe as other products available;

b.    that the PRODUCTS were dangerous; and,

c.    that the PRODUCTS were defectively and negligently designed and had defective, inadequate, and insufficient warnings and instructions.

143.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants were under a duty to disclose to Plaintiff, and the public in general, the defective nature of the PRODUCTS.

144.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants made the misrepresentations and actively concealed information concerning the safety and efficacy of the PRODUCTS with the intention and specific desire to induce the consumers, including the Plaintiff, to rely on such misrepresentations in selecting, purchasing and using the PRODUCTS.

145.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants made these misrepresentations and actively concealed information concerning the safety and efficacy of the PRODUCTS in the labeling, advertising, promotional material or other marketing efforts.

146.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, these representations, and others made by Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and without regard to the true facts.

147.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, the misrepresentations and active concealments by Defendants were perpetuated directly and indirectly by Defendants, their sales representative, employees,

distributors, agents, marketers and detail persons.

148.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, the representations were made, Plaintiff did not know the truth about the dangers and serious health and/or safety risks inherent in the use of the PRODUCTS.  Plaintiff did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiff discover the false representations of Defendants, nor would Plaintiff with reasonable diligence have discovered the true facts or Defendants' misrepresentations.

149.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants knew that Plaintiff, and the public in general, had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the PRODUCTS, as set forth herein.

150.   Had Plaintiff known the true facts about the dangers and serious health and/or safety risks of the PRODUCTS, Plaintiff would not have purchased, used, been exposed to, or relied on Defendants' PRODUCTS.

151.   Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public, including Plaintiff.

152.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, the information distributed to the public and Plaintiff by Defendants included, but was not limited to, reports, press releases, advertising campaigns, television commercials, print advertisements, billboards, and other commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the PRODUCTS.

153.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants intentionally made material misrepresentations to the medical community and public, including Plaintiff, regarding the safety of the PRODUCTS, specifically that the PRODUCTS did not have dangerous and/or serious adverse health safety concerns, and that the PRODUCTS were as safe as other products.

154.   Plaintiff is informed and believes, and based thereon alleges that, at all relevant

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL                    PAGE 31 OF 35

times alleged herein, Defendants' intent and purpose in making these misrepresentations was to deceive the Plaintiff; to gain the confidence of the public, the medical community, and Plaintiff, to falsely assure them of the quality and fitness for use of the PRODUCTS; and induce Plaintiff and the public to use the PRODUCTS.

155.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the PRODUCTS to the public at large, for the purpose of influencing the sales of PRODUCTS known to be dangerous and defective, and/or not as safe as other alternatives.

156.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, at all times relevant to this action, Defendants knew that the PRODUCTS were not safe for consumers.

157.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, the misrepresentations and active concealment by Defendants constitute a continuing tort.  Indeed, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of the PRODUCTS.

158.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, as a result of the Defendants' advertising and marketing efforts, and representations, the PRODUCTS are and continue to be pervasively manufactured and used in California and throughout the United States.

159.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, the acts, conduct, and omission of Defendants, and each of them, as alleged throughout this Complaint were fraudulent, willful and malicious and were done with a conscious disregard for the rights of the Plaintiff and other users of the PRODUCTS and for the primary purpose of increasing Defendants' profits from the sale and distribution of the PRODUCTS. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against each Defendant in an amount appropriate to punish and make an example of each Defendant.

160.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, prior to the manufacturing, sale and distribution of the PRODUCTS, Defendants, and each of them, knew that the PRODUCTS were in a defective condition as previously alleged herein and knew that those who used the PRODUCTS would experience and did experience severe injuries.  Further, Defendants and each of them through their officers, directors, managers, and agents, had knowledge that the PRODUCTS presented a substantial and unreasonable risk of harm to the public, including Plaintiff and, as such, consumers of the PRODUCTS were unreasonably subjected to risk of injury.

161.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, despite such knowledge, Defendants, and each of them, acting through its officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in the PRODUCTS and failed to warn the public, including the Plaintiff, of the extreme risk of injury occasioned by said defects inherent in the PRODUCTS.  Defendants and their individual agents, officers, and directors, intentionally proceeded with the manufacturing, sale, distribution and marketing of the PRODUCTS knowing that the public, including Plaintiff, would be exposed to serious danger in order to advance Defendants' own pecuniary interest and monetary profits.

162.    Plaintiff is informed and believes, and based thereon alleges that, at all relevant times alleged herein, Defendants' conduct was despicable, and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for safety, entitling Plaintiffs to exemplary damages under California Civil Code §3294.

163.    Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the PRODUCTS were the cause of any appreciable harm sustained by Plaintiff, within the applicable limitations period of first suspecting or having reason to suspect any wrongdoing, and within the applicable limitations period of first discovering the injuries.  Plaintiff could not, by the exercise of reasonable diligence, have discovered any wrongdoing and could not have discovered the causes of the injuries at an earlier time because the injuries occurred

without initial perceptible trauma or harm and, when the injuries were discovered, the causes were not immediately known. Plaintiff did not suspect, nor did he have reason to suspect, that wrongdoing had caused the injuries until recently. Plaintiff filed the original action within two years of discovering the causes of action and identities of Defendants.

164. Plaintiff had no knowledge of the defects in the PRODUCTS or of the wrongful conduct of Defendants as set forth herein, nor did Plaintiff have access to information regarding other injuries and complaints in the possession of Defendants. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants herein misrepresented and continue to misrepresent to the public that the PRODUCTS are safe and free from defects, and Defendants fraudulently concealed information to allow Plaintiff to discover a potential cause of action sooner.

165. Plaintiff has reviewed her potential legal claims and causes of action against the Defendants and intentionally chooses only to pursue claims based on state-law. Any reference to any federal agency, regulation or rule is stated solely as background information and does not raise a federal question. Plaintiff chooses to only pursue claims based on state law and is not making any claims that raise federal questions.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally, and as appropriate to each cause of action alleged and the standing of Plaintiff as follows:

   a. Past and future general damages, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at time of trial;

   b. Past and future economic and special damages according to proof at the time of trial;

   c. Past and future medical expenses according to proof at the time of trial;

   d. Past and future pain and suffering damages expenses according to proof at the time of trial;

   e. Punitive or exemplary damages according to proof at the time of trial;

   f. Attorney's fees;

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL                    PAGE 34 OF 35

g.  For costs of suit incurred herein;

h.  For prejudgment interest as provided by law; and,

i.  For such other and further relief as the Court may deem just and proper.

Dated:  April 23, 2025

/s/ *Andrew Parker Felix*
ANDREW PARKER FELIX (SBN 276002)
Email: andrew@forthepeople.com
MORGAN & MORGAN, P.A.
633 West Fifth Street, Suite 2200
Los Angeles, CA 90071
Telephone: (407) 244-3209
Fax: (407) 245-3334

R. Allen Smith, Jr. (*pro hac vice forthcoming*)
THE SMITH LAW FIRM, PLLC
300 Concourse Blvd., Suite 104
Ridgeland, MS  39157
Telephone: (601) 952-1422
Facsimile: (601) 952-1426
Email: asmith@smith-law.org
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all counts in this Complaint.

Dated: April 23, 2025

/s/ *Andrew Parker Felix*
ANDREW PARKER FELIX (SBN 276002)
Email: andrew@forthepeople.com
MORGAN & MORGAN, P.A.
633 West Fifth Street, Suite 2200
Los Angeles, CA 90071
Telephone: (407) 244-3209
Fax: (407) 245-3334

R. Allen Smith, Jr. (*pro hac vice forthcoming*)
THE SMITH LAW FIRM, PLLC
300 Concourse Blvd., Suite 104
Ridgeland, MS  39157
Telephone: (601) 952-1422
Facsimile: (601) 952-1426
Email: asmith@smith-law.org
*Attorneys for Plaintiffs*